AO 257 (Rev. 6/78)

| DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT |
|---|

BY: ☐ COMPLAINT ☐ INFORMATION ☒ INDICTMENT
☐ SUPERSEDING

**OFFENSE CHARGED**

18 U.S.C. § 371 – Conspiracy To Defraud The United States;
18 U.S.C. § 545 – Smuggling Into The United States;
15 U.S.C. §§ 2614 and 2615 – Toxic Substances Control Act;
49 U.S.C. § 5124 – Hazardous Materials Transportation Act;

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY:
Please see attachment.

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

FILED
2017 FEB 16 PM 2:09
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NO. DIST. OF CA.

DEFENDANT - U.S.
▶ PEIWEN ZHOU and AK SCIENTIFIC, INC.

CR17-0091 JD

DISTRICT COURT NUMBER

**PROCEEDING**

Name of Complaintant Agency, or Person (& Title, if any)
Environmental Protection Agency

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form  Brian J. Stretch
☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)  S. Waqar Hasib

**DEFENDANT**

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶ _____

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)
_____

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction       ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution
_____

Has detainer been filed?  ☐ Yes  ☐ No     If "Yes" give date filed _____

DATE OF ARREST ▶ Month/Day/Year _____

Or... if Arresting Agency & Warrant were not
DATE TRANSFERRED TO U.S. CUSTODY ▶ Month/Day/Year _____

☐ This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT     Bail Amount: _____

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance
Defendant Address:
_____

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____  Before Judge: _____

Comments:

# ATTACHMENT TO PENALTY SHEET

# PEIWEN ZHOU and AK SCIENTIFIC, INC.

| Count | Offense | Maximum Penalty |
|---|---|---|
| 1 | 18 U.S.C. § 371 – Conspiracy To Defraud The United States | 5 years in prison<br>3 years supervised release<br>$250,000 fine<br>$100 special assessment |
| 2 | 18 U.S.C. § 545 – Smuggling Into The United States | 20 years in prison<br>3 years supervised release<br>$250,000 fine<br>$100 special assessment |
| 3, 11 | 15 U.S.C. §§ 2614 and 2615 – Toxic Substances Control Act | Up to 1 year in prison<br>Up to 1 year supervised release<br>Up to $50,000 for each day of violation<br>$25 special assessment for ZHOU<br>$125 special assessment for AK SCIENTIFIC |
| 4 through 10 | 49 U.S.C. § 5124 – Hazardous Materials Transportation Act | 5 years in prison<br>3 years supervised release<br>$250,000 fine<br>$100 special assessment |

# United States District Court

FOR THE
**NORTHERN DISTRICT OF CALIFORNIA**

VENUE: OAKLAND

---

UNITED STATES OF AMERICA,

V.

**CR17 ▒▒ 91**

PEIWEN ZHOU and
AK SCIENTIFIC, INC.

DEFENDANT(S).

---

## INDICTMENT

18 U.S.C. § 371 – Conspiracy To Defraud The United States;
18 U.S.C. § 545 – Smuggling Into The United States;
15 U.S.C. §§ 2614 and 2615 – Toxic Substances Control Act;
49 U.S.C. § 5124 – Hazardous Materials Transportation Act;
18 U.S.C. § 2 – Aiding and Abetting

---

A true bill.

_Kam Williams_
Foreman

Filed in open court this __16__ day of
__February 2017__.

_[signature]_
Clerk

**Laurel Beeler**
United States Magistrate Judge

Bail, $ no bail warrant for Peiwen Zhou
no process as to AK Scientific

*[Filed stamp: 2017 FEB 16 P 2:09, SUSAN Y. SOONG, CLERK, US DISTRICT COURT, NO. DIST. OF CA.]*

*JD*

BRIAN J. STRETCH (CABN 163973)
United States Attorney



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. |
| Plaintiff, | VIOLATIONS: 18 U.S.C. § 371 – Conspiracy To Defraud The United States; 18 U.S.C. § 545 – Smuggling Into The United States; 15 U.S.C. §§ 2614 and 2615 – Toxic Substances Control Act; 49 U.S.C. § 5124 – Hazardous Materials Transportation Act; 18 U.S.C. § 2 – Aiding and Abetting |
| v. | |
| PEIWEN ZHOU and AK SCIENTIFIC, INC., | |
| Defendants. | |
| | OAKLAND VENUE |

INDICTMENT

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

PEIWEN ZHOU and AK SCIENTIFIC, INC.

1. AK SCIENTIFIC, INC. (herein "AK SCIENTIFIC"), was incorporated on June 23, 2004, and began operating in approximately 2006. AK SCIENTIFIC was involved in the business of selling research and specialty chemicals. The company was initially located in Mountain View, California. In approximately 2010, the company relocated to Union City, California.

INDICTMENT                                    1

2. PEIWEN ZHOU (herein "ZHOU") was AK SCIENTIFIC's founder, owner, and chief executive officer. ZHOU received a Ph.D. in chemistry in 1998. After founding AK SCIENTIFIC, ZHOU employed between 4 and 50 other people in various capacities, including shipping and receiving.

3. AK SCIENTIFIC purchased chemicals from other chemical supply companies. Some of AK SCIENTIFIC's suppliers were located internationally, in the People's Republic of China, among other places. AK SCIENTIFIC sold chemicals from its inventory to customers. AK SCIENTIFIC's customers included universities, research laboratories, and other entities. Some of AK SCIENTIFIC's customers were located domestically, including in the San Francisco Bay Area. Other AK SCIENTIFIC customers were located internationally, in South Korea, Poland, India and New Zealand, among other places.

4. AK SCIENTIFIC used common carrier companies to obtain chemicals from its suppliers, and to deliver chemicals to its customers. AK SCIENTIFIC typically sent and received these chemicals by both air and ground delivery.

### The Hazardous Materials Transportation Act

5. The Hazardous Materials Transportation Act (herein "HMTA") was enacted by Congress to protect the public from the risks to life, property, and the environment that are inherent in the transportation of hazardous materials in commerce. 49 U.S.C. § 5101. Under the HMTA, a "hazardous material" means any substance or material that the Secretary of the Department of Transportation designates as hazardous material, including explosive, flammable or combustible liquid, solid, or gas, or toxic or corrosive material. 49 U.S.C. §§ 5102(2), 5103(a).

6. The HMTA provides the Secretary of Transportation with the authority to prescribe regulations for the safe transportation of hazardous materials in intrastate, interstate, and foreign commerce. 49 U.S.C. § 5103(b).

7. Pursuant to this authority, the Secretary of Transportation has promulgated Hazardous Material Regulations (HMRs), which appear at 49 C.F.R., Parts 171-180. The HMRs set forth requirements for the safe and secure transportation in commerce of materials designated as hazardous materials, and apply to each person who performs, or causes to be performed, functions related to the

1 | transportation of such materials. 49 C.F.R. §§ 171.1 and 171.8.

8. The HMRs contain a Hazardous Materials Table, which lists hazardous materials descriptions, proper hazardous materials shipping names, hazard classes, materials identification numbers (also known as United Nations numbers or UN numbers), packing group numbers, label codes, and other pertinent information. 49 C.F.R. § 172.101.

9. Among other things, the HMRs require any person who offers for transportation in commerce a hazardous material designated in the Hazardous Materials Table to:

    a. Provide a shipping paper that sets forth the proper shipping name prescribed for the hazardous materials, the hazard classes, the material identification numbers, the packing group numbers, and the total quantity of the hazardous materials. 49 C.F.R. §§ 172.201-172.203.

    b. Mark the package with the proper shipping name, identification number, and technical names, on a label with sharply contrasting color. 49 C.F.R. §§ 172.301 (general marking requirements for non-bulk packages) and 172.304 (marking requirements).

    c. Label the package with specified labels designated in the regulations. 49 C.F.R. §§ 172.400, 172.402, 172.407, and 172.411-172.448.

    d. Provide emergency response information that is immediately available for use at all times the hazardous material is present. 49 C.F.R. §§ 172.600 and 172.602.

    e. Ensure that each employee handling hazardous materials is trained to comply with the HMRs that apply to that employee's particular job functions, including training on measures to protect the employee from the dangers associated with hazardous materials to which they may be exposed in the workplace, and training on measures and procedures for avoiding accidents. 49 C.F.R. §§ 172.700-172.704.

10. The HMRs allow certain hazardous materials to be shipped in very small quantities, known as "excepted quantities." 49 C.F.R. § 173.4a. Typically, in order to qualify as an excepted quantity, a package must contain no more than 30 grams of a hazardous material (though some particularly dangerous substances can only be sent in quantities of no more than 1 gram in order to qualify as an excepted quantity). A package that contains hazardous materials in these small, "excepted

INDICTMENT 3

quantities" typically will not be subject to many of the shipping, marking, labeling, and training regulations described above that would otherwise apply if the package contained larger quantities of hazardous materials. However, even when shipped in excepted quantities, packages must be durably and legibly marked with the following marking:



with the "*" replaced by the primary hazard class of the hazardous materials contained in the package, and the "**" replaced by the name of the shipper or consignee, if not shown elsewhere on the package. 49 C.F.R. § 173.4a(g).

11. The Department of Transportation's Pipeline and Hazardous Materials Safety Administration (PHMSA) is delegated authority under the regulations to conduct inspections of hazardous materials and to conduct enforcement activity involving the inspecting of labels and packaging. 49 C.F.R. §§ 107.301, 107.303, and 107.305. Intentionally mislabeling packages that contain hazardous materials interferes with this lawful government function, among others.

## The Toxic Substances Control Act

12. The Toxic Substances Control Act (TSCA) was enacted after Congress found that there were some chemicals whose manufacture, processing, distribution in commerce, use or disposal presented an unreasonable risk of injury to health or the environment. 15 U.S.C. § 2601(a)(2). Under TSCA, the Administrator of the United States Environmental Protection Agency (EPA) is required to maintain an inventory (herein "the TSCA Inventory") of each "chemical substance" which is manufactured or processed in the United States. 15 U.S.C. § 2607(b). The TSCA Inventory currently lists approximately 85,000 chemicals and is published online and elsewhere by the EPA. *See generally* https://www.epa.gov/tsca-inventory; 40 C.F.R. Part 710.

13. Under TSCA, the EPA Administrator is authorized to issue "significant new use rules," governing the use of particular chemical substances, if the manufacture, processing, distribution in commerce, use, or disposal of such substances presents or may present an unreasonable risk of injury to health or the environment. 15 U.S.C. § 2604(b)(4)(A).

14. The EPA Administrator has issued a significant new use rule for the chemical substance known as triphosgene, also known as methanol, tricholoro-, carbonate (2:1), also known as bis(trichloromethyl) carbonate, or BTC. This rule requires any container of triphosgene in the workplace to bear the following statements on the container label:

> This substance may cause: skin irritation
> This substance may cause: respiratory complications
> This substance may cause: central nervous system effects
> This substance may cause: cancer
> When using this substance: avoid skin contact
> When using this substance: avoid breathing substance
> When using this substance: avoid ingestion
> This substance may react to form phosgene gas.
> When using this substance, handle with extreme caution.

40 C.F.R. § 721.4880(a)(2)(i). A failure to ensure that each container of triphosgene in the workplace is labeled with these statements is a significant new use of triphosgene requiring notification to the EPA. 15 U.S.C. § 2604(a)(1); 40 C.F.R. § 721.72(b).

15. The EPA has authority under the regulations to enjoin the manufacture, import or processing of a chemical substance such as triphosgene in violation of any significant new use rules, to

INDICTMENT 5

seize any such chemical substances, and to take other appropriate actions. 40 C.F.R. § 721.35. A failure to notify the EPA that a chemical substance such as triphosgene is being used for a significant new use interferes this lawful government function, among others.

16. Under TSCA, any person who imports certain chemical substances listed in the TSCA Inventory is required to file a certification with U.S. Customs and Border Patrol (CBP) stating that the chemical shipment is either subject to TSCA and complies with it, or is not subject to TSCA. 19 C.F.R. § 12.121(a). This certification is known as a TSCA Import Certification. In addition, TSCA delegates authority to the Secretary of the Treasury to impose tariffs on chemical substances imported into the United States that are listed in the TSCA Inventory. 15 U.S.C. § 2612. These tariffs are imposed in accordance with the Harmonized Tariff Schedule of the United States. Tariff Act of 1930, 19 U.S.C. § 1202. Failure to file a TSCA certification and failure to identify an import as containing a chemical substance listed on the TSCA inventory constitutes a violation of the Tariff Act. 19 U.S.C. § 1592(a).

17. Under TSCA, any person who exports or intends to export certain chemical substances listed in the TSCA Inventory is required to notify the EPA of such export. 15 U.S.C. § 2611(b); 40 C.F.R. § 707.60. This notification is known as a TSCA Section 12(b) notice.

18. Triphosgene is a chemical for which a TSCA Section 12(b) notice is required prior to or upon export. 15 U.S.C. § 2611(b); 40 C.F.R. § 721.20; 40 C.F.R. § 721.4880.

19. Upon receipt of a TSCA Section 12(b) notice of export, the EPA is required under the regulations to notify the receiving country's government within 5 business days of the identity of the chemical being shipped, and the risks of injury it may pose to health or the environment. 40 C.F.R. § 707.70. Failure to file a TSCA Section 12(b) notice interferes with this lawful government function, among others.

COUNT ONE: 18 U.S.C. § 371 - Conspiracy to Defraud the United States

20. The factual allegations set forth in paragraphs 1 through 19 above are re-alleged and incorporated as if fully set forth herein.

21. Starting on an unknown date, but no later than approximately 2008, and continuing

INDICTMENT 6

through on or about February 3, 2016, in the Northern District of California and elsewhere, the defendants,

PEIWEN ZHOU and AK SCIENTIFIC,

together with other employees at AK SCIENTIFIC and others known and unknown to the Grand Jury, knowingly and willfully conspired to defraud the United States and agencies thereof, by obstructing the lawful functions of the United States Environmental Protection Agency (EPA) to enforce the Toxic Substances Control Act (TSCA) and the lawful functions of the United States Department of Transportation (DOT) to enforce the Hazardous Materials Transportation Act (HMTA), by deceitful and dishonest means.

## MANNER AND MEANS

22. Defendants ZHOU and AK SCIENTIFIC and other individuals engaged in a conspiracy to obstruct the lawful functions of the EPA and the DOT by and through the following manners and means, among others:

    a. ZHOU instructed employees in AK SCIENTIFIC's purchasing and receiving department to purchase chemicals, including chemicals listed on the TSCA Inventory, from suppliers in China using false names for the chemicals, thereby avoiding TSCA requirements.

    b. ZHOU instructed employees in AK SCIENTIFIC's shipping department to deliberately ship hazardous materials listed in the HMTA as non-hazardous materials, so as to avoid HMTA requirements.

    c. ZHOU instructed employees in AK SCIENTIFIC's shipping department to ship hazardous materials as "excepted quantity" shipments, even though the shipments contained quantities greater than allowed under the HMTA "excepted quantity" rules.

## OVERT ACTS

23. In furtherance of the conspiracy, and to carry out the objects of the conspiracy, the following overt acts, among others, were committed in the Northern District of California and elsewhere:

    a. On or about September 19, 2012, Company #1 shipped a package from Shanghai,

INDICTMENT 7

China, to employees at AK SCIENTIFIC. The package contained 25 kilograms of 1,2-dibromoethane, a hazardous material regulated by the HMTA and a chemical substance regulated by the TSCA Inventory. The shipping papers attached to the package falsely described the contents as "Bema Inkjet Ink(Flush)."

  b. On or about November 11, 2014, employees at AK SCIENTIFIC shipped a package to Company #2 in Gyeonggi-do, South Korea. The package contained triphosgene, a hazardous material regulated by the HMTA and a chemical substance regulated by the TSCA Inventory. The shipping papers that AK SCIENTIFIC employees attached to the package described the contents as "laboratory chemical reagent for laboratory research," and did not declare any hazardous materials.

  c. On or about September 26, 2014, employees at AK SCIENTIFIC shipped packages to Company #3 in Wellington, New Zealand. The packages contained imidazole, 4-(Trifluoromethyl) aniline, and copper sulfate, anhydrous, which are all hazardous materials regulated by the HMTA. The hazardous materials were all shipped in quantities greater than 30 grams. The packages did not include shipping papers, labeling, marking, or emergency response information as required under HMTA.

  d. On or about January 8, 2015, ZHOU sent a letter to the Federal Aviation Administration claiming that the hazardous materials described above that AK SCIENTIFIC shipped to Company #3 in New Zealand were all under 30 grams and therefore were shipped as "excepted quantities."

  e. On or about January 28, 2016, employees at AK SCIENTIFIC attempted to ship a package to Company #4 in Calcutta, India. The package contained 5 grams of 4-aminopropriophenone, a hazardous material regulated by the HMTA and a chemical substance regulated by the TSCA Inventory. The shipping papers that AK SCIENTIFIC employees attached to the package described the contents as "laboratory chemical reagent for research, non-hazardous." The package did not include the marking described above in paragraph 10, indicating that it contained an "excepted quantity" of hazardous materials.

All in violation of Title 18, United States Code, Section 371.

COUNT TWO: 18 U.S.C. § 545 – Smuggling into the United States

24. The factual allegations set forth in paragraphs 1 through 4 and 12 through 19, above, are re-alleged and incorporated as if fully set forth herein.

25. On or about September 19, 2012, in the Northern District of California and elsewhere, the defendants,

PEIWEN ZHOU and AK SCIENTIFIC,

fraudulently and knowingly imported and brought into the United States merchandise, to wit: 25 kilograms of 1,2-dibromoethane, contrary to the law of the United States, by claiming said merchandise to be "Bema Inkjet Ink(Flush)," and failing to properly complete a TSCA Import Certification, in violation of the Tariff Act of 1930, 19 U.S.C. §§ 1202, 1592(a), and 19 C.F.R. § 12.121.

All in violation of Title 18, United States Code, Sections 545 and 2.

COUNT THREE: 15 U.S.C. §§ 2614 and 2615 - Toxic Substances Control Act

26. The factual allegations set forth in paragraphs 1 through 4 and 12 through 19, above, are re-alleged and incorporated as if fully set forth herein.

27. On or about November 11, 2014, in the Northern District of California and elsewhere, the defendants,

PEIWEN ZHOU and AK SCIENTIFIC,

knowingly and willfully failed and refused to comply with a requirement and rule promulgated under the Toxic Substances Control Act, to wit, the requirement to file a TSCA Section 12(b) notice for the export of triphosgene, in violation of 15 U.S.C. § 2611(b) and 40 C.F.R. §§ 721.20 and 721.4880.

All in violation of Title 15, United States Code, Sections 2614 and 2615, and Title 18, United States Code, Section 2.

INDICTMENT 9

COUNTS FOUR THROUGH TEN: 49 U.S.C. 5124(a) – Hazardous Materials Transportation Act

28. The factual allegations set forth in paragraphs 1 through 11 above are re-alleged and incorporated as if fully set forth herein.

29. On or about the dates set forth in the table below, in the Northern District of California, the defendants,

PEIWEN ZHOU and AK SCIENTIFIC,

willfully and recklessly offered for transportation the hazardous materials set forth in the table below, without labeling the packages as containing hazardous materials, in violation of 49 C.F.R. § 172.400:

| COUNT | DATE OFFERED FOR TRANSPORT | HAZARDOUS MATERIAL SHIPPED |
|---|---|---|
| 4 | July 3, 2014 | 1,2-dibromoethane |
| 5 | March 27, 2015 | N-Bromosuccinimide |
| 6 | August 26, 2015 | P-toluenesulfonyl cyanide |
| 7 | August 26, 2015 | 3-fluorophenylacetylene |
| 8 | August 26, 2015 | 3,3-dimethylcyclohexanone |
| 9 | September 21, 2015 | Di-tert-butyl dicarbonate |
| 10 | January 28, 2016 | 4'-aminopropriophenone |

All in violation of Title 49, United States Code, Section 5124(a) and Title 18, United States Code, Section 2.

COUNT ELEVEN: 15 U.S.C. §§ 2614 and 2615 - Toxic Substances Control Act

30. The factual allegations set forth in paragraphs 1 through 4 and 12 through 19, above, are re-alleged and incorporated as if fully set forth herein.

31. On or about February 3, 2016, in the Northern District of California, the defendants,

PEIWEN ZHOU and AK SCIENTIFIC,

knowingly and willfully failed and refused to comply with a rule promulgated under the Toxic Substances Control Act, to wit, the rule set forth in 40 C.F.R. § 721.4880(a)(2)(i) requiring that any container of triphosgene in the workplace bear required statements on the container label as described above in paragraph 14, said failure and refusal constituting a significant new use of triphosgene that

required submittal of a notification to EPA pursuant to 15 U.S.C. § 2604(a)(1).

All in violation of Title 15, United States Code, Sections 2614 and 2615, and Title 18, United States Code, Section 2.

DATED:                                                          A TRUE BILL.

2/16/17

*Kara Williams*
FOREPERSON

BRIAN J. STRETCH
United States Attorney

*Eli Dur, for*
BARBARA J. VALLIERE
Chief, Criminal Division

(Approved as to form: _____*SEB*_____ )
                    AUSA S. WAQAR HASIB