FILED

DEC 2 0 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  BRIAN J. STRETCH (CABN 163973)
   United States Attorney
2
   BARBARA J. VALLIERE (DCBN 439353)
3  Chief, Criminal Division

4  S. WAQAR HASIB (CABN 234818)
   Assistant United States Attorney
5
       1301 Clay Street, Suite 340S
6      Oakland, California 94612
       Telephone: (510) 637-3680
7      FAX: (510) 637-3724
       waqar.hasib@usdoj.gov
8
   Attorneys for United States of America
9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11
                          OAKLAND DIVISION
12

13

14  UNITED STATES OF AMERICA,              )  NO. CR-17-0091-JD
                                           )
15         Plaintiff,                       )  DEFERRED PROSECUTION AGREEMENT
                                           )  BETWEEN THE UNITED STATES OF AMERICA
16  v.                                      )  AND AK SCIENTIFIC, INC.
                                           )
17  AK SCIENTIFIC, INC.,                    )
                                           )
18         Defendant.                       )
                                           )
19

20              **DEFERRED PROSECUTION AGREEMENT**

21         Defendant AK Scientific, Inc. (the "Company"), by its undersigned representatives, and the

22  United States Attorney's Office for the Northern District of California ("government"), enter into this

23  deferred prosecution agreement ("Agreement"), the terms and conditions of which are as follows:

24                      **Acceptance of Responsibility**

25         1.     The Company acknowledges that it is named in the attached criminal Information filed in

26  the Northern District of California charging the Company with: (1) failing and refusing to comply with

27  requirements and rules promulgated under TSCA, in violation of 15 U.S.C. §§ 2614 and 2615; and (2)

28  offering hazardous materials for transportation without labeling the packages as containing hazardous

    DEFERRED PROSECUTION AGREEMENT
    CR 17-0091-JD

1  materials, in violation of 49 U.S.C. § 5124. The Company (a) knowingly waives all rights to a speedy

2  trial pursuant to the Sixth Amendment to the United States Constitution, 18 U.S.C. § 3161, and Federal

3  Rule of Criminal Procedure 48(b); and (b) knowingly waives, for purposes of this Agreement and any

4  charges by the government arising out of the conduct described in Attachment A attached hereto and

5  incorporated by reference into this Agreement, any objection with respect to venue.

6      2.      The Company admits, accepts, and acknowledges that it is responsible under United

7  States law for the acts of its officers, directors, employees, and agents as set forth in Attachment A, and

8  that the allegations described in Attachment A are true and accurate. Should the government pursue the

9  prosecution that is deferred by this agreement, the Company stipulates to the admissibility of

10  Attachment A in any proceeding, including any trial, guilty plea, or sentencing proceeding, and will not

11  contradict anything in Attachment A at any such proceeding. Neither this Agreement nor the

12  Information is a final adjudication of the matters addressed in such documents.

13                    **Term of the Agreement**

14      3.      This Agreement is effective for a period beginning on the date which it is signed, and

15  ending three years from that date (the "Term"). The Company agrees, however, that, in the event that

16  the government determines, in its sole discretion, that the Company has knowingly violated any

17  provision of this Agreement, an extension or extensions of the term of the Agreement may be imposed

18  by the government, in its sole discretion, for up to a total additional time period of one year, without

19  prejudice to the government's right to proceed as provided in Paragraphs 14 through 17 below. The

20  government agrees to provide the Company with written notice prior to instituting such extension.

21  Within 30 days of receipt of such notice, the Company shall have the opportunity to respond to the

22  government in writing to explain the nature and circumstances of the alleged breach in question, as well

23  as the actions the Company has taken to address and remediate the situation, which explanation the

24  government shall consider in determining whether to require an extension. Any extension of the

25  Agreement extends to all terms of this Agreement for an equivalent period. Conversely, in the event

26  that the government finds, in its sole discretion, that there exists a change in circumstances sufficient to

27

28

DEFERRED PROSECUTION AGREEMENT
CR 17-0091-JD

1   eliminate the need for any reporting requirements described herein, and that the other provisions of this

2   Agreement have been satisfied, the term of the Agreement may be terminated early.

3                                    **Relevant Considerations**

4        4.      The government enters into this Agreement based on the individual facts and

5   circumstances presented by this case and the Company.  Among the facts the government considered

6   were the following: (a) the estimated number of packages that the Company shipped in violation of

7   either the HMTA or TSCA; (b) remedial measures taken by the Company since the Company first

8   became aware of the government's investigation in January of 2016, and further remedial measures

9   taken by the Company since an indictment was returned in this case in January of 2017, which are

10  described in further detail in Attachment B; and (c) the loss of significant customers suffered by the

11  Company as a result of the indictment in this case, and the potential loss of additional customers if the

12  Company were to be convicted of any offenses, resulting in the company's possible insolvency.

13       5.      The Company shall cooperate fully with the government in any and all matters relating to

14  the conduct described in this Agreement and Attachments A and B, until the date upon which all

15  investigations and prosecutions arising out of such conduct are concluded, whether or not those

16  investigations and prosecutions are concluded within the Term specified in Paragraph 3.  At the request

17  of the government, the Company shall also cooperate fully with other federal and state law enforcement

18  and regulatory authorities and agencies, in any investigation of the Company or any of its present or

19  former officers, directors, employees, agents, and consultants, or any other party, in any and all matters

20  relating to the conduct described in this Agreement and in Attachments A and B.  The Company agrees

21  that its cooperation pursuant to this Paragraph shall include, but not be limited to, the following:

22              a.   The Company shall truthfully disclose all factual information not protected by a

23                   valid claim of attorney-client privilege or work product doctrine with respect to its

24                   activities and those of its present and former directors, officers, employees,

25                   agents, and consultants, relating to the conduct described in this Agreement and in

26                   Attachments A and B, about which the Company has any knowledge or about

27                   which the government may require.  This obligation of truthful disclosure

28

DEFERRED PROSECUTION AGREEMENT
CR 17-0091-JD

includes, but is not limited to, the obligation of the Company to provide to the government, upon request, any document, record, or other tangible evidence about which the government may inquire of the Company.

b.  Upon request of the government, the Company shall designate a knowledgeable employee, agent, or attorney to provide the government the information described in Paragraph 5(a) above on behalf of the Company.  It is further understood that the Company must at all times provide complete, truthful, and accurate information.

c.  The Company shall use its best efforts to make available for interviews or testimony, as required by the government, present or former officers, directors, employees, agents, and consultants of the Company.  This obligation includes, but is not limited to, sworn testimony in any federal proceeding, as well as interviews with federal and state law enforcement and regulatory authorities.  Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of the Company, may have material information regarding the matters under investigation.

d.  With respect to any information, testimony, documents, records, or other materials provided to the government pursuant to this Agreement, the Company consents to any and all disclosures, subject to applicable law and regulations, to other federal and state authorities of such materials as the government, in its sole discretion, shall deem appropriate.

6.  In addition to the obligations in Paragraph 5, during the Term of the Agreement, should the Company discover any evidence or allegations of any shipments of hazardous materials in violation of the HMTA or evidence or allegations of failure to comply with any of the rules and regulations promulgated under TSCA, the Company shall promptly report such evidence or allegations to the government.

///

DEFERRED PROSECUTION AGREEMENT
CR 17-0091-JD

4

1

### Payment of Criminal Monetary Penalties

2    7.    The government and the Company agree that United States Sentencing Guidelines
3    Section 8C2.10 governs any fine applicable to this case. The Company agrees to pay a criminal
4    monetary penalty in the amount of $100,000 to the United States Treasury, to be paid during the term of
5    this Agreement. The Company and the government agree that this criminal monetary penalty is
6    appropriate, given the facts and circumstances of this case, including the nature and extent of the
7    Company's failure to comply with TSCA and HMTA over a period of several years, the estimated
8    number of packages that the Company shipped over that time period that contained improperly labeled
9    and/or improperly packaged hazardous materials, and the remedial measures that the Company has taken
10   since becoming aware of the government's investigation. The $100,000 criminal monetary penalty is
11   final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement
12   by the government that $100,000 is the maximum criminal penalty that may be imposed in any future
13   prosecution, and the government is not precluded from arguing in any future prosecution that the Court
14   should impose a higher fine, although the government agrees that under those circumstances, it will
15   recommend to the Court that any amount paid under this Agreement should be offset against any fine
16   the Court imposes as part of a future judgment. The Company acknowledges that no United States tax
17   deduction may be sought in connection with the payment of any part of the criminal monetary penalty
18   described herein.

19

### Conditional Release from Liability

20   8.    Subject to paragraphs 14 through 17, the government agrees, except as provided herein
21   and subject to related agreements between the government and co-defendant Peiwen Zhou, that it will
22   not bring any further criminal or civil cases against the Company relating to the conduct described in
23   Attachment A, or any other conduct disclosed by the Company to the government prior to the date of
24   this Agreement. The Company agrees that the government may use any information related to the
25   conduct described in Attachment A against the Company: (a) in a prosecution for perjury or obstruction
26   of justice; (b) in a prosecution for making a false statement; or (c) in a prosecution or other proceeding
27   relating to a violation of any provision of Title 26 to the United States Code.

28

DEFERRED PROSECUTION AGREEMENT
CR 17-0091-JD

5

    a.  This Paragraph does not provide any protection against prosecution for any future conduct by the Company.

    b.  In addition, this Paragraph does not provide any protection against prosecution of any present or former officer, director, employee, shareholder, agent, consultant, contractor, or subcontractor of the Company for any violations committed by them.

### Compliance and Monitoring

9.    The Company agrees to retain an independent monitor who will monitor the Company's compliance with all applicable HMTA and TSCA rules and regulations. Within 30 days of the signing of this Agreement, the Company will propose a pool of three qualified candidates for the independent monitor, from which the government will select the independent monitor or direct the Company to nominate additional qualified candidates. The Company is expressly permitted to include within this pool of three qualified candidates the individual whom it previously hired as a result of the Indictment in this case, Robert Richard; however, the Company agrees that the government is under no obligation to select Mr. Richard as the independent monitor for purposes of this Agreement. The Company shall pay reasonable compensation and expenses of the independent monitor chosen by the government. During the term of this Agreement, the independent monitor will provide written reports of the results of the independent monitor's compliance reviews every six (6) months to the United States Probation Office, the government, and the Company. During the term of this Agreement, the Company will have a reasonable opportunity to cure any alleged violation of the TSCA or HMTA regulations identified by: (1) the independent monitor; (2) any regulatory agency, including the Pipeline and Hazardous Materials Safety Administration ("PHMSA"), the Federal Aviation Administration ("FAA"), or EPA; (3) the United States Probation Office; (4) or the government. The government will not oppose a motion by the Company for early termination of the monitor if: (1) after the conclusion of 18 months, that is, following the third 6-month compliance review report of its three-year term, the Company is in full compliance with the requirements of this Agreement, including as determined by the independent monitor and the United States Probation Office; and (2) the independent monitor or any regulatory

DEFERRED PROSECUTION AGREEMENT
CR 17-0091-JD

1   agency, including PHMSA, the FAA, or the EPA, have not identified any violations of the TSCA or

2   HMTA regulations.

3         10.    The Company agrees that Peiwen Zhou will resign as CEO and President of AK

4   Scientific no later than the date of his sentencing.  The Company agrees that Peiwen Zhou will take no

5   part in and serve no management or executive function with regard to matters relating to compliance

6   with any governmental regulations, or supervision of employees with regard to those tasks.  The

7   Company agrees that Peiwen Zhou will take no part in the hiring, termination, or discipline of any

8   employees in departments that are tasked with regulatory compliance (i.e. shipping and receiving of

9   hazardous chemicals and related regulatory notices or filings).  The Company agrees that if Peiwen

10   Zhou remains in any capacity at AK Scientific, he will be limited to working only as the company's

11   Principal Scientist.  The Company agrees that Peiwen Zhou's responsibilities as Principal Scientist will

12   be limited to the development and marketing of AK Scientific's product catalog, and oversight of AK

13   Scientific's quality control and quality assurance programs regarding purity, identity, and other quality

14   specifications for AK Scientific's products.   The Company agrees that any violation of the terms set out

15   in this paragraph shall constitute a material breach of this Agreement.

16         11.    During the Term of this Agreement, the Company shall conduct a presentation at an

17   educational seminar or industry convention approved by the independent monitor appoint under

18   Paragraph 9.  That presentation shall acknowledge the existence of this Agreement, and will focus on the

19   importance of complying with all relevant governmental regulations, with an emphasis on HMTA and

20   TSCA.  That presentation will also explain how the Company has instituted an effective compliance

21   program, and identify measures the Company has taken to ensure regulatory compliance to prevent

22   recurrence of similar violations in the future.  The specific subject matter, venue, and topics shall be

23   approved by the independent monitor.

### Deferred Prosecution

25         12.    In consideration of (a) the remedial measures taken by the Company as set forth in

26   Attachment B and (b) the Company's payment of criminal monetary penalties described above in

27

28

DEFERRED PROSECUTION AGREEMENT
CR 17-0091-JD

1 │ paragraph 7, the government agrees that any criminal prosecution of the Company for the conduct set

2 │ forth in Attachment A is hereby deferred for the Term of this Agreement.

3 │     13.    The government further agrees that if the Company fully complies with all of its

4 │ obligations under this Agreement, the government will not continue the criminal prosecution against the

5 │ Company as described in Paragraph 1, and, at the conclusion of the Term, this Agreement shall expire.

6 │ Within 30 days of the Agreement's expiration, the government shall seek dismissal with prejudice of the

7 │ Information filed against the Company described in Paragraph 1, and agrees not to file charges in the

8 │ future against the Company based on the conduct described in this Agreement and in Attachment A.

9 │ **Breach of the Agreement**

10 │     14.    If, during the Term of this Agreement, the Company (a) commits any felony under U.S.

11 │ federal law subsequent to the signing of this Agreement, (b) provides in connection with this Agreement

12 │ deliberately false, incomplete, or misleading information, (c) fails to cooperate as set forth in Paragraph

13 │ 5, (d) fails to implement the monitoring program as set forth in Paragraph 9, its removal of Peiwen Zhou

14 │ from all compliance and regulatory functions as set forth in Paragraph 10, or the industry presentation

15 │ plan as set forth in Paragraph 11; (e) commits any acts that, had they occurred within the jurisdictional

16 │ reach of the HMTA or TSCA, would be a violation of either of those statutes; or (f) otherwise fails

17 │ specifically to perform or fulfill completely each and every one of the Company's obligations under the

18 │ Agreement, the government shall, in its sole discretion, determine whether the Company has breached

19 │ the Agreement. If the government determines that the Company has breached the Agreement, the

20 │ Company shall thereafter be subject to prosecution for any federal criminal violation of which the

21 │ government has knowledge, including, but not limited to, the charges in the Information described in

22 │ Paragraph 1. Any such prosecution may be premised on information provided by the Company. Any

23 │ such prosecution relating to the conduct described in Attachment A or relating to the conduct known to

24 │ the government prior to the date on which this Agreement was signed that is not time-barred by the

25 │ applicable statute of limitations on the date of the signing of this Agreement may be commenced against

26 │ the Company notwithstanding the expiration of the statute of limitations between the signing of this

27 │ Agreement and the expiration of the Term plus one year. Thus, by signing this agreement, the Company

28 │

DEFERRED PROSECUTION AGREEMENT
CR 17-0091-JD

1 agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the

2 date of the signing of this Agreement shall be tolled for the Term plus one year.

3      15.    In the event that the government determines that the Company has breached this

4 Agreement, the government agrees to provide the Company with written notice of such breach prior to

5 instituting any prosecution resulting from such breach. Within 30 days of receipt of such notice, the

6 Company shall have the opportunity to respond to the government in writing to explain the nature and

7 circumstances of such breach, as well as the actions the Company has taken to address and remediate the

8 situation, which explanation the government shall consider in determining whether to institute a

9 prosecution.

10      16.    In the event that the government determines that the Company has breached this

11 Agreement, Attachment A shall be admissible in evidence in any and all criminal proceedings brought

12 by the government against the Company. The Company shall not assert any claim under the United

13 States constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules

14 of Evidence, or any other federal rule that Attachment A should be suppressed or is otherwise

15 inadmissible.

16      17.    The Company acknowledges that the government has made no representations,

17 assurances, or promises concerning what sentence may be imposed by the Court if the Company

18 breaches this Agreement and this matter proceeds to judgment. The Company further acknowledges

19 that any such sentence is solely within the discretion of the Court and that nothing in this Agreement

20 binds or restricts the Court in the exercise of such discretion.

21                                     **Sale or Merger of Company**

22      18.    Except as may otherwise be agreed by the parties hereto in connection with a particular

23 transaction, the Company agrees that in the event it sells, merges, or transfers all or substantially all of

24 its business operations as they exist as of the date of this Agreement, whether such sale is structured as a

25 sale, asset sale, merger, or transfer, it shall include in any contract for sale, merger, or transfer a

26 provision binding the purchaser, or any successor in interest thereto, to the obligations described in this

27 Agreement.

28

DEFERRED PROSECUTION AGREEMENT
CR 17-0091-JD

1

**Limitations on Binding Effect of Agreement**

2   19.   This Agreement is binding on the Company and the government but specifically does not

3   bind any other federal agencies, or any state, local, or foreign law enforcement or regulatory agencies, or

4   any other authorities, including but not limited to the civil enforcement division of the Federal Aviation

5   Administration, although the government will bring the cooperation of the Company and its compliance

6   with its other obligations under this Agreement to the attention of such agencies and authorities if

7   requested to do so by the Company.

8

**Complete Agreement**

9   20.   This Agreement sets forth all the terms of the agreement between the Company and the

10   government.  No amendments, modifications, or additions to this Agreement shall be valid unless they

11   are in writing and signed by the government, the attorney for the Company, and a duly authorized

12   representative of the Company.

13   AGREED:

14

15   BRIAN J. STRETCH
     United States Attorney

16   Dated: 12/20/17

17   S. WAQAR HASIB
     Assistant United States Attorney

18

19

20

21   FOR AK SCIENTIC, INC.:

22   Dated: 12/20/17

23   KEVIN ZHOU
     AK Scientific, Inc.

24

25   Dated: December 20 2017

26   CHARLES WOODSON, ESQ.
     Attorney for Defendant

27

28

DEFERRED PROSECUTION AGREEMENT
CR 17-0091-JD

10

**ATTACHMENT A**

**STATEMENT OF FACTS**

The following Statement of Facts is incorporated by reference as part of the Deferred Prosecution Agreement (the "Agreement") between the United States Attorney's Office for the Northern District of California (the "USAO") and AK Scientific, Inc. (the "Company"). The Company hereby agrees and stipulates that the following information is true and correct:

The Company admits, accepts, and acknowledges that it is responsible under United States law for the acts of its officers, directors, employees and agents as set forth below. Should the USAO pursue the prosecution that is deferred by this Agreement, the Company agrees that it will neither contest the admissibility of, nor contradict, this Statement of Facts in any such proceeding. If this matter were to proceed to trial, the USAO would prove beyond a reasonable doubt, by admissible evidence, the facts alleged below. This evidence would establish the following:

<u>Relevant Entities and Indivdiuals</u>

The Company was incorporated on June 23, 2004, and began operating in approximately 2006. The Company was involved in the business of selling research and specialty chemicals. The Company was initially located in Mountain View, California. In approximately 2010, the Company relocated to Union City, California.

PEIWEN ZHOU (herein "ZHOU") was the Company's founder, owner, and chief executive officer. ZHOU received a Ph.D. in chemistry in 1998. After founding the Company, ZHOU employed between 4 and 50 other people in various capacities, including shipping and receiving.

The Company purchased chemicals from other chemical supply companies and sold chemicals from its inventory to customers. The Company's customers included universities, research laboratories, and other entities. Some of the Company's customers were located domestically, including in the San Francisco Bay Area. Other customers were located internationally.

1

The Company used common carrier companies to obtain chemicals from its suppliers, and to deliver chemicals to its customers. The Company typically sent and received these chemicals by both air and ground delivery.

Criminal Conduct

Starting in 2008, and continuing until approximately February 3, 2016, on a number of occasions ZHOU caused employees in the Company's shipping department to ship hazardous materials listed in the HMTA as non-hazardous materials, both domestically and internationally, and by both ground and air, in violation of the HMTA requirements. ZHOU also caused employees in the Company's purchasing and receiving department to purchase chemicals, including chemicals listed on the TSCA Inventory, which were sometimes shipped from suppliers in China under different names, without filing corresponding TSCA certification statements.

As one example, on approximately July 3, 2014, the Company shipped a package containing 100 grams of 1,2-dibromoethane by ground shipment to a company in Northern California without properly labeling the package with the following label, identifying it as a Class 6.1 poisonous inhalation hazard:



As another example, on approximately September 19, 2012, the Company received a 25 kilogram shipment of 1,2-dibromoethane from China under a different name, and failed to file the corresponding TSCA certification statement necessary for imports of 1,2-dibromoethane.

**ATTACHMENT B**

AK Scientific has taken extensive steps in remediation, since learning of the government's investigation. Specifically, the Company has reassigned management responsibilities and created a de facto Corporate Compliance Officer ("CCO"), a position which will be formalized in conjunction with this Agreement. Specifically, the Company has instituted a robust and regular training program, updated and changed its standard operating procedures ("SOP") to ensure regulatory compliance, drafted and updated the Company's SOP manuals, and implemented numerous technical changes to the Company's computer and software programs to enhance regulatory compliance. The Company has also hired consultants to advise it with regard to various regulatory responsibilities, which included on-site evaluation. While the Company has expended significant resources on this work, it has made every effort to retain its employees.

With regard to training, the Company has hired a consultant with several decades of hazardous materials experience who conducted a multi-day on site training for its employees and management. This training addressed a variety of topics, including dangerous good regulations, classification of dangerous goods, and preparation of dangerous goods shipments. Additional function-specific training and continuing education has also occurred regularly on such topics as "Hazardous Materials Air Shipper Certification Course (IATA)," "TSCA Regulations," "Shipping Hazmat by Ground," "Managing Hazard Communication," "TSCA: Chemical Reporting and Recordkeeping," and "Conditionally Exempt Small Quantity Generators." Finally, the Company has instituted weekly "employee-led" trainings that are researched, prepared, and presented in conjunction with the CCO.